

FILED by _____ D.C.
ELECTRONIC
JUNE 30, 2008
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**08-21864-MC-LENARD/GARBER**

IN THE MATTER OF THE TAX
LIABILITIES OF:

JOHN DOES, United States taxpayers, who at any time during the years ended December 31, 2002 through December 31, 2007, had signature or other authority (including authority to withdraw funds; to make investment decisions; to receive account statements, trade confirmations, or other account information; or to receive advice or solicitations) with respect to any financial accounts maintained at, monitored by, or managed through any office in Switzerland of UBS AG or its subsidiaries or affiliates and for whom UBS AG or its subsidiaries or affiliates (1) did not have in its possession Forms W-9 executed by such United States taxpayers, and (2) had not filed timely and accurate Forms 1099 naming such United States taxpayers and reporting to United States taxing authorities all reportable payments made to such United States taxpayers.

MEMORANDUM IN SUPPORT OF
*EX PARTE* PETITION FOR LEAVE
TO SERVE "JOHN DOE" SUMMONS

    The United States of America respectfully submits the following Memorandum in support of its *Ex Parte* Petition for Leave to Serve John Doe Summons:

INTRODUCTION

    This is an *ex parte* proceeding brought by the United States of America, pursuant to Sections 7609(f) and (h) of the Internal Revenue Code (26 U.S.C.), for leave to serve an Internal Revenue Service "John Doe" summons upon UBS AG ("UBS"). Section 7609(f) provides that a summons which does not identify the person with respect to whose liability it is issued may be

3345860.1

served only after a court proceeding in which the United States establishes certain factors. These types of summonses are known as "John Doe" summonses. Section 7609(h)(1) provides that a district court in which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceeding brought under Section 7609(f). UBS is found in this judicial district, as it has two branch offices in Miami-Dade County. Section 7609(h)(2) provides that any determinations required to be made under Section 7609(f) shall be made *ex parte* and shall be made solely on the petition and supporting affidavits.

## QUESTIONS PRESENTED

Whether, as required by Section 7609(f), the United States of America has demonstrated (1) that the "John Doe" summons which the Internal Revenue Service desires to serve upon UBS relates to the investigation of an ascertainable group or class of persons; (2) that there is a reasonable basis for believing that such group or class of persons may fail or may have failed to comply with any provision of any internal revenue law; and (3) that the information sought to be obtained from the examination of the records or testimony (and the identities of the persons with respect to whose liability the summons is issued) is not readily available from other sources.

## BACKGROUND

Attached to this memorandum is a Declaration by Revenue Agent Daniel Reeves. In his Declaration, Reeves describes for the Court the tradition of offshore financial accounts in financial privacy jurisdictions. Through a review of numerous studies on the matter and his experience with the Internal Revenue Service, Revenue Agent Reeves explains that a growing number of United States taxpayers are making use of offshore accounts to evade the reporting and payment of income taxes. In the instant case, the Internal Revenue Service seeks to serve a

"John Doe" summons on UBS, a Swiss bank with branches around the world, including a major presence in the United States. As described in the Reeves Declaration, the Internal Revenue Service has learned that UBS has assisted certain United States taxpayers conceal their beneficial ownership of offshore accounts in order to avoid detection by the Internal Revenue Service. UBS segregates United States taxpayers with accounts in Switzerland into two categories: those who provide their taxpayer identification numbers to UBS on Forms W-9 to enable UBS to report their income to the Internal Revenue Service, and those who choose to remain undeclared. The Internal Revenue Service is conducting an investigation to determine the identities of those United States taxpayers with UBS accounts in Switzerland who failed to give UBS Forms W-9 and for whom UBS has not filed Forms 1099. Learning the identities of these individuals is one of the purposes that the United States seeks to achieve with the proposed "John Doe" summons.

In 2001, UBS entered into a Qualified Intermediary Agreement ("Q.I. Agreement") with the Internal Revenue Service. Prior to the Q.I. Agreement, United States tax laws required UBS to make U.S. income tax withholdings on all income earned from U.S. securities, whether the account holder was a United States taxpayer or not. Thus, UBS had an incentive to enter into the Q.I. Agreement, because doing so would allow it to limit or entirely forego these withholdings for its foreign, non-United States taxpayer clients. In exchange for this, however, UBS agreed to greater reporting obligations with regard to United States taxpayers. The Q.I. Agreement was intended to mark a significant departure from the historically strict financial secrecy laws enjoyed by United States taxpayers with Swiss accounts, which often resulted in the concealing of otherwise taxable income to the IRS.

As is described in further detail in the Declaration of Barry B. Shott, the Q.I. Agreement required UBS to identify truthfully the citizenship and residence of its clients so that UBS could either report taxable payments to the United States on a Form 1099 or, where appropriate, withhold tax at a twenty-eight percent rate to be paid over to the United States. UBS was to do this by having its clients complete either IRS Forms W-8BEN ("Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding") or IRS Forms W-9 ("Request for Taxpayer Identification Number and Certification"). Non-United States taxpayers were to complete Forms W-8BEN, which essentially certified that the beneficial owner of the offshore account was a foreign, non-United States taxpayer. On the other hand, United States taxpayers were to complete Forms W-9, which would identify them as United States taxpayers and provided UBS with the information necessary for it to file Forms 1099 with the Internal Revenue Service reporting all payments. As explained in the Shott Declaration, the Q.I. Agreement required UBS to prohibit any United States taxpayers refusing to complete Forms W-9 from investing in U.S. securities. Furthermore, under certain circumstances, UBS was to make back-up withholdings on income earned in these "undeclared" accounts.

Because compliance with the Q.I. Agreement meant that United States taxpayers would have to identify themselves to the Internal Revenue Service (or alternatively, remain anonymous but possibly be subject to a twenty-eight percent withholding), many United States taxpayers with offshore UBS accounts had their central motivation behind the account neutralized, to wit: the concealment of their offshore accounts from the Internal Revenue Service and the evasion of U.S. income tax. The Internal Revenue Service has since learned, however, that UBS assisted United States taxpayers avoid the disclosure obligations under the Q.I. Agreement.

Bradley Birkenfeld is a former employee of UBS who recently pleaded guilty to conspiring to assist high-profile United States taxpayer, Igor Olenicoff, evade paying $7.2 million in taxes by assisting him to conceal $200 million of assets. The criminal case against Birkenfeld is pending in this district, Case No. 0:08-CR-60099-ZLOCH. According to Birkenfeld's Statement of Facts provided by him at his allocution, UBS, in order to avoid the reporting requirements of the Q.I. Agreement, assisted wealthy United States taxpayers create offshore nominee and sham entities to act as foreign beneficial owners of the offshore accounts. Doing so enabled United States taxpayers to avoid filing Forms W-9 identifying them as such, which consequently meant that UBS would not report the United States taxpayers' identities or their income to the Internal Revenue Service. The Internal Revenue Service suspects that there are many United States taxpayers who similarly received UBS's assistance to hide their offshore accounts. The failure to submit Forms W-9 is the central attribute for those United States taxpayers looking to avoid disclosure of their identity and income to the Internal Revenue Service. Hence, the proposed "John Doe" class is described as follows:

> United States taxpayers, who at any time during the years ended December 31, 2002 through December 31, 2007, had signature or other authority (including authority to withdraw funds; to make investment decisions; to receive account statements, trade confirmations, or other account information; or to receive advice or solicitations) with respect to any financial accounts maintained at, monitored by, or managed through any office in Switzerland of UBS AG or its subsidiaries or affiliates and for whom UBS AG or its subsidiaries or affiliates (1) did not have in its possession Forms W-9 executed by such United States taxpayers, and (2) had not filed timely and accurate Forms 1099 naming such United States taxpayers and reporting to United States taxing authorities all reportable payments made to such United States taxpayers.

## DISCUSSION

In furtherance of this investigation, the Internal Revenue Service is requesting authorization to serve a "John Doe" summons on UBS, a financial institution that provides "a comprehensive range of products and services, individually tailored for wealthy and affluent clients around the world . . ." In 2007, UBS Wealth Management International & Switzerland recorded a "net new money intake" of 125 billion Swiss Francs, with a total of 1,294 billion Swiss Francs in invested assets.  This memorandum explains how the proposed summons meets the necessary elements of a "John Doe" summons.

### I.   The Summons for Which the Government Seeks Authorization Meets the Requirements of a "John Doe" Summons

Section 7601 of the Internal Revenue Code requires the Secretary of the Treasury to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." Section 7602 authorizes the Secretary to summon records and testimony for that purpose.  Specifically, Section 7602 authorizes the Secretary "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax . . . [t]o summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . ., or any other person the Secretary may deem proper, to appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry."

Section 7602 is the Internal Revenue Service's principal information-gathering authority, and, accordingly, the courts have broadly construed it in light of its intended purpose of furthering the effective conduct of tax investigations. Thus, the courts have repeatedly rejected attempts to circumscribe or thwart the effective exercise of the Internal Revenue Service's summons power. See, e.g., United States v. Euge, 444 U.S. 707, 715-716 (1980); United States v. Bisceglia, 420 U.S. 141 (1975); Couch v. United States, 409 U.S. 322, 338 (1973).

In Bisceglia, the Supreme Court held that Sections 7601 and 7602 empowered the Internal Revenue Service to issue a "John Doe" summons to a bank to discover the identity of a person who had engaged in certain bank transactions. This authority was explicitly codified in Section 7609(f) of the Internal Revenue Code, as added by the Tax Reform Act of 1976. Section 7609(f) provides as follows:

> Any summons . . . which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that –
>
> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
>
> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
>
> (3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

The "John Doe" summons for which the United States seeks authorization in the instant case meets those three requirements. It relates to the investigation of an ascertainable group or class of persons – United States taxpayers who, at any time between December 31, 2002 and

December 31, 2007, had financial accounts with UBS in Switzerland, and for whom UBS (1) did not have in its possession IRS Forms W-9, and (2) had not filed timely and accurate IRS Forms 1099 to United States taxing authorities for all reportable payments made to United States taxpayers. There is a reasonable basis for believing that such group or class of persons may fail, or may have failed, to comply with one or more provisions of the internal revenue laws. And the information sought to be obtained from the examination of the records or testimony (and the identity of the persons with respect to whose tax liabilities the summonses have been issued) is not readily available from other sources.

### A. The Investigation Is Related to an Ascertainable Class

As required by Section 7609(f)(1), the group or class of persons to be investigated here is ascertainable – United States taxpayers, who at any time during the years ended December 31, 2002, through December 31, 2007, had signature or other authority (including authority to withdraw funds; to make investment decisions; to receive account statements, trade confirmations, or other account information; or to receive advice or solicitations) with respect to any financial accounts maintained at, monitored by, or managed through any office in Switzerland of UBS or its subsidiaries or affiliates, and for whom UBS or its subsidiaries or affiliates (1) did not have in its possession Forms W-9 executed by such United States taxpayers, and (2) had not filed timely and accurate Forms 1099 reporting to United States taxing authorities all reportable payments made to such United States taxpayers.

This class is readily ascertainable by UBS. As explained in the Reeves Declaration, UBS divided its United States taxpayer clients with UBS accounts in Switzerland into two groups: (1) those who submitted Forms W-9 (which would identify the United States taxpayer as the

beneficial owner of the account and provide UBS with the information necessary to file with the IRS Forms 1099 reporting all payments made thereto) ("declared accounts"); and (2) those who chose not to file Forms W-9 ("undeclared accounts"). Thus, it seems that UBS can readily identify which clients fall within the ambit of the "John Doe" class.

      **B.    Reasonable Basis Exists for the Belief That the Unknown Persons May Fail, or May Have Failed to Comply with the Internal Revenue Laws**

With respect to the second requirement, set forth in Section 7609(f)(2), the Declaration of Revenue Agent Daniel Reeves reflects a reasonable basis for believing that the unknown persons whose identities are sought by the summonses may fail, or may have failed, to comply with one or more provisions of the internal revenue laws.

In the first instance, money transfers between the United States and Switzerland, a jurisdiction with a widely-known reputation for protecting the identity of account holders, are inherently reasonably suggestive of tax avoidance. More importantly, the "John Does" chose not to submit the documents necessary for UBS to report their taxable payments to the IRS. See 26 U.S.C. Sections 6042 & 6049 (imposing a duty on payors of dividends and interest to file a information returns (e.g., Forms 1099) with the IRS). This omission leads to the reasonable suspicion that these United States taxpayers similarly failed to report these taxable items on their income tax returns. United States taxpayers are legally bound to report their various items of worldwide income, and failing to do so would be in direct violation of applicable internal revenue laws. See 26 U.S.C. Section 6012(a) (imposing a duty to file tax returns reporting income).

In <u>United States v. Pittsburgh Trade Exchange, Inc.</u>, 644 F.2d 302, 306 (3d Cir. 1981), the court held that the "reasonable basis" test had been met based upon a revenue agent's testimony that barter transactions of the type arranged by the Pittsburgh Trade Exchange were "inherently susceptible to tax error." In <u>United States v. Ritchie</u>, 15 F.3d 592, 601 (6th Cir. 1994), the court held that the mere payment for legal services with large amounts of cash is a reasonable basis for the issuance of a "John Doe" summons. Likewise, omitting the steps necessary to ensure that UBS reports items of income to the Internal Revenue Service leads to the suspicion that the "John Does" similarly failed to report such income on their income tax returns. In short, there is a reasonable basis for the issuance of the summons at issue.

As detailed in the Declaration of Revenue Agent Reeves, UBS made clear to its United States taxpayer clients that they could remain anonymous to the Internal Revenue Service simply by not filing a Form W-9 with UBS. Not having Forms W-9 on file enabled UBS to avoid filing with the IRS, Forms 1099 for those United States taxpayers, which would have disclosed the identity of the account holder, as well as taxable payments made with respect to the account. According to a letter that UBS sent on November 4, 2002 to United States taxpayers with offshore accounts (Exhibit E to the Reeves Declaration), the only drawback for the U.S. clients not wishing to file a Form W-9 was a prohibition on their further investment in U.S. securities.

UBS, however, assisted its United States taxpayer clients with offshore accounts to avoid both the filing of Forms W-9 as well as the restrictions on holding U.S. securities. UBS achieved this favorable result by forming nominee entities in foreign jurisdictions to act as beneficial owners of the accounts. So long as documentation was submitted to UBS establishing the foreign entity as the beneficial owner (i.e., filing with UBS a Form W-8BEN as opposed to a

Form W-9), UBS treated it as such. In other words, if the account were structured so that it *appeared as though* a foreign entity were the beneficial owner–even though UBS may have known otherwise–UBS would not report to the Internal Revenue Service payments made on that account. The Declaration of Daniel Reeves describes Birkenfeld's Statement of Facts, a document on UBS's web page, as well as other evidence corroborating these suspicions.

Birkenfeld's Statement of Facts also describes the circumstances surrounding the high-profile indictment of former UBS client and United States taxpayer, Igor Olenicoff. As explained in the Declaration of Daniel Reeves, Olenicoff, with UBS's assistance, formed a Bahamian corporation and fraudulently completed an IRS Form W-8BEN to make it appear as though the corporation was the beneficial owner of his offshore account with UBS. To this and other bogus entities, Olenicoff transferred $60 million, as well as a 147-foot yacht. Because it was in the name of a foreign entity, neither Olenicoff nor UBS reported to the Internal Revenue Service payments made to the account. In December 2007, Olenicoff pleaded guilty to a criminal account of filing a false 2002 tax return.

There is reason to suspect that, much like Olenicoff, many United States taxpayers used UBS's services to shelter their assets and, as a result, failed to file accurate tax returns. In fact, in recent weeks, numerous articles in major newspapers have recounted the story of Birkenfeld and Olenicoff, with many also describing the angst among many United States taxpayers who fear that their false returns will now find their way to the desk of an Internal Revenue Service examiner.

The parallels between Olenicoff and the "John Doe" class provide further support for the IRS's reasonable belief that the "John Does" violated internal revenue laws. See, e.g., United

11

States v. Brigham Young University, 679 F.2d 1345, 1349-50 (10th Cir. 1982), vacated for consideration of mootness, 459 U.S. 1095 (1983) (prior audit experience with other contributors that had overvalued "in kind" contributions was a reasonable basis for issuing a "John Doe" summons for the identity of all "in kind" contributors to Brigham Young University); United States v. Kersting, 891 F.2d 1407 (9th Cir. 1989) ("John Doe" summons enforced after district court found "the existence of at least one case in which a Tax Court found some of Kersting's programs to be abusive of the tax code." 891 F.2d at 1409. The Ninth Circuit affirmed: "There was ample basis for believing that the persons about whom records were sought had not complied with the tax law." 891 F.2d at 1412).

### C. The Identity of Persons in the Class Is Not Readily Available from Other Sources

With respect to the third and final requirement set forth in Section 7609(f)(3), the information sought (and the identity of the persons with respect to whose tax liabilities the summonses have been issued) is not readily available to the Internal Revenue Service from other sources, but is available from UBS.

Persons in the "John Doe" class may have filed tax returns with the Internal Revenue Service, but their names are unknown, and an inspection of a particular taxpayer's return is not likely to reveal understatements or misstatements of income resulting from transactions concealed through the offshore transfers of funds or the failure to report foreign accounts.

The United States has two diplomatic means of obtaining financial records from Switzerland, but neither avenue is an acceptable alternative to the "John Doe" summons. First, the United States has a Mutual Legal Assistance Treaty ("MLAT") with Switzerland, which

contains a mechanism for the exchange in connection with a United States criminal investigation of specific charges. Because the Internal Revenue Service does not have a criminal investigation of the "John Doe" class, however, the MLAT cannot be used for the present purposes.

Second, the United States can make an official request to the Swiss government pursuant to the Convention between the United States and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income ("the Swiss treaty"). As described in the Declaration of Barry B. Shott, however, the Swiss treaty historically has been applied to provide the Internal Revenue Service assistance only in response to specific requests that name the particular taxpayer, which the Internal Revenue Service cannot currently do since it does not know the identities of the "John Doe" class. Although the Swiss government has recently indicated a willingness to consider a treaty request for the records of the "John Doe" class of taxpayers, there is no guarantee that the request would be successful. Furthermore, a treaty request could delay the investigation of the taxpayers in the "John Doe" class. Section 6501 of the Internal Revenue Code imposes a general three-year period of limitations on the assessment of taxes after a return is filed and a six-year period for substantial omissions of income from a return. A delay in pursuing a possibly unsuccessful treaty request could jeopardize the timely assessment of taxes against the taxpayers whose records are sought in this summons.[1]

The records at issue are in the possession of UBS. The taxpayers whose records are sought have chosen to remain undisclosed to the Internal Revenue Service and have done so with

---

[1] Once the Internal Revenue Service serves a summons for a taxpayer's records, Section 7609(e)(2) suspends the running of the statute of limitations if the records are not produced starting on the date 6 months after service of the summons.

the assistance of UBS. The only readily available means for the Internal Revenue Service to identify these taxpayers and obtain the records is pursuant to a John Doe summons.

## II. COURTS HAVE APPROVED "JOHN DOE" SUMMONSES IN A SIMILAR INVESTIGATION

The circumstances discussed above has led the Internal Revenue Service to make this request for the Court's approval of the proposed "John Doe" summons. Because the IRS's investigation is still in its early stages, there are no prior instances where the Internal Revenue Service sought to issue a "John Doe" summons to gather information concerning Swiss financial accounts held by United States taxpayers. In a similar context, however, courts have previously approved the issuance of "John Doe" summonses to credit card companies for the identities of United States taxpayers using offshore credit cards as a means of tax evasion. For example, on October 30, 2000, the Southern District of Florida in Case No. 00-3919 CIV-JORDAN issued an order approving the service of "John Doe" summonses upon American Express and MasterCard International, Inc. Similarly, on August 20, 2002, the Southern District of Florida in Case No. 02-22404-CIV-UNGARO-BENAGES issued an order approving a second "John Doe" summons upon MasterCard International, Inc.

## III. CONCLUSION

The summons for which the government seeks authorization meets the requirements of a "John Doe" summons. Accordingly, the Court should enter an order granting the Internal Revenue Service leave to serve a "John Doe" summons upon UBS AG in substantially the form as attached as Exhibit A to the Declaration of Daniel Reeves.

R. ALEXANDER ACOSTA
United States Attorney

By: *[signature]*

RICHARD D. EULISS
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
Telephone: (202) 514-5915
Facsimile: (202) 514-9868
Richard.D.Euliss@usdoj.gov